USCA1 Opinion

 

 May 30, 1995 [NOT FOR PUBLICATION] United States Court of Appeals For the First Circuit ____________________ No. 94-2289 PUERTO RICO MARINE MANAGEMENT, INC., Plaintiff, Appellee, v. EMPRESAS MASSO, ET AL., Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Jose A. Hernandez Mayoral with whom Rafael Hernandez Mayoral was __________________________ ________________________ on brief for appellants. Carlos J. Quilichini with whom Juan Carlos Gorbea was on brief _____________________ ___________________ for appellee. ____________________ ____________________ COFFIN, Senior Circuit Judge. This is an appeal from a _____________________ judgment, following a bench trial, for plaintiff vessel operator, Puerto Rico Marine Management (PRMMI), in its suit to collect freight charges for a deficit of cargo placed under a Time Volume Agreement (TVA) by defendants (collectively, Masso).1 Under the TVA, covering the period from May 1990 to August 1992, Masso agreed to ship a minimum of 500 "trailers" annually from continental United States to Puerto Rico. The complaint alleged that during this period only 410 shipments were booked; the deficit was 590. Applying the appropriate tariff of "$250.00 per container/trailer," the total claimed deficit was $147,500. Masso's response to the complaint was the affirmative defense that PRMMI breached the TVA. In the pre-trial order, submitted to the court by both parties, Masso outlined its defense: the TVA (through its use of ther judges are tempted to resort to "preachy" opinions, issuing admonitions about the future which they and their courts are unlikely to follow up with vigor. An example is the unhappiness of appellate courts with some of the closing arguments to the jury made by overzealous prosecutors. In an otherwise error-free case it is tempting to shake a judicial finger and say, "We shall not in the future permit such conduct." But the next case comes along, with overwhelming evidence of guilt and in the main a fair trial. An appellate court will be reluctant to reverse and will therefore  ____________________ 1 Empresas Masso, Inc., Bloques Masso, Inc., Ferreteria Masso, Inc., Caguas Lumber Yard, Inc., Masso Enterprises, Inc. look to see if objection was made to the offending argument, if the judge made an immediate curative instruction, and if in the context of the entire case the remarks were likely to have had any effect. One learns from long and frustrating experience that one reversal is worth a hundred lectures. In such matters as these, affecting the manner in which cases are tried and the rules and standards governing judges and counsel, an appellate court may on occasion rest its decision, not on a constitution, statue or regulation, or even upon case precedents, but upon its own supervisory authority over the agencies and courts within its jurisdiction. It is a power to be used sparingly, but does allow fine tuning not confined to the precise issues raised by a particular case. When a panel of a federal court decides to take this route, it usually circulates its proposed rule to all members of the court for comment and agreement. It is understandable that an attorney in an appellate court is so immersed in her case that her attention has been rivetted on winning a victory. "Victory" is usually translated into the simple alternatives: affirmance or reversal. But the court itself must confront a number of collateral choices having to do with the kind, form, finality, secondary consequences, and timing of decision. Some of these choices will be seen as immensely important to the litigants and their counsel. Some chiefly concern the internal workings of the court. But all are worth some thought on the part of counsel . . . in order to be of help both to themselves and the court. -3- 2. Unfinished business. Before a conference ends, the ___________________ court must reflect on whether decision is the next step. It may be that, before a novel approach is taken, supplemental memoranda should be requested. Or perhaps at oral argument they already have been. Or it may be that, at oral argument, the court has suggested that the parties attempt to settle the case, or that a compromise resolution be explored. And sometimes, when a case involving the same issue is pending before the Supreme Court, the court will simply defer its decision until The Supreme Court acts.  3. Disposition choices. The two options for a final ____________________ decision are, of course, to affirm or reverse. An added subtlety is a decision whether or not to have the mandate (the document that evidences the fact that it the decision is now effective) issue immediately or to allow some time for a petition for certiorari (i.e., a request that the case be accepted for review) __________ to be presented to the Supreme Court of the United States. Decisions that are somewhat less than final are those which remand the case to the trial court. There are many variants: a remand with instructions only to "institute proceedings in accordance with this opinion;" a remand with specific instructions (e.g., in a successful habeas corpus appeal, a remand to the federal district court with instructions to grant the prisoner's freedom unless the state initiates a new trial within ninety days); a remand for clarification of the court's reasoning, or for essential fact finding; a remand with or -4- without a requirement to open the record for additional evidence; and a remand to a different judge. Each one of these possibilities could be fraught with significance for a litigant; an advocate would do well to anticipate these choices and be prepared to give advice to the court. Then there are critical choices as to timing. A basic question is whether a new rule or an extension of existing law should be applicable prospectively or retrospectively. But there are timing questions relating to the issuance of the instant decision. Sometimes the panel (if it is a federal court of appeals) knows that one of the issues is being considered by another panel in another case; some checking with that panel is indicated. The resry, and conceded that a number of lumber shipments had been made for Masso on lo/lo vessels. He did testify that "for a period of time" in the latter part of 1990 there was no ro/ro vessel servicing Jacksonville, and he also stated that at sales meetings, in trying to anticipate revenues, he would review contracts, including Masso's TVA. Unable to give more specific testimony because of the sanctions imposed by the court, he gave his conclusory opinion that PRMMI did not provide MASSO with enough ro/ro service to comply with the TVA. This evidence, even viewed most charitably for defendants on the assumption that only ro/ro's were contemplated by the TVA, might support a finding that to some extent at some time PRMMI did not live up to its undertaking. But it is clear that, contrary to defendants' initial contention, PRMMI did not phase -5- out its ro/ro fleet during the contract period. Two of the three ro/ro vessels remained in service for the duration. It is also clear that, except for one period of time of uncertain length, there was no failure to provide ro/ro service to any port. Generally, the temporary unavailability of a vessel resulted in biweekly rather than weekly service for a post. What is left completely unclear is any basis for assessing the magnitude of any breach on PRMMI's part, to determine if it was sufficient to justify Masso's failure to book more than half of its promised shipments during the two-year period. The record is bereft of data as to dates, ports, cargoes, and substituted arrangements relating to shipments frustrated because of a lack of proper equipment. Moreover, the record contains no evidence of expressed unhappiness, oral or written, over PRMMI's performance; acquiescence and waiver remain distinct possibilities. On all of this, we remind ourselves, defendants bore the burden of both going forward with evidence and the ultimate burden of persuasion. On the record, therefore, we must rule, as a matter of law, that defendants simply failed to support their affirmative defense. AFFIRMED. -6-